IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JEFFREY GREENLEAF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 07-G-0841-NE |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

**MEMORANDUM OPINION**

The plaintiff, Jeffrey Greenleaf, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying his application for Supplemental Security Income benefits. Plaintiff timely pursued and exhausted his administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

**STANDARD OF REVIEW**

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239..

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I). For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether he has a severe impairment;

(3) whether his impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform his past work; and

>    (5)   whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

In the instant case, ALJ Robert L. Hodges determined the plaintiff met the first two tests, but concluded that while he has an impairment or impairments considered "severe," his impairments do not meet or equal in severity any impairment set forth at 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 20]. The ALJ found the plaintiff unable to perform his past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." Foote, at 1559. Furthermore, when, as is the case here, a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical-Vocational Guidelines (the grids). Foote, at 1558-59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. Foote, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." Foote, at 1559.

## THE STANDARD WHEN THE CLAIMANT TESTIFIES HE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929; Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability."  Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

### THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical

question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail). However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited. Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law. Id at 1401. The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id. If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand. As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain

6

testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

ALJ Hodges found that the plaintiff "has 'severe' bilateral shoulder injuries; status post left arthroscopy to repair an injury; and status post surgery times two to repair a right rotator cuff tear. . . ." [R. 17].   Indeed, the plaintiff's treating orthopedic surgeon, Ray A. Fambrough, M.D., described on November 2, 2006, the plaintiff's injuries as follows:

> Mr. Greenleaf is a 46-year-old young man with a severe injury to his right shoulder back in 2005.  He was found to have a severe tear of his rotator cuff with marked retraction.  He underwent a repair of this initially back in November of 2005, but he failed.  During the intervening recovery period, something popped in his shoulder and he had severe pain in the shoulder again with loss of motion.  At that time a new MRI scan was done and it showed a complete tear of his very fibrotic rotator cuff.  We did a second attempt at reconstruction, but the tissues were not amenable to mobilization as well as we would have hoped.  We were able to mobilize the tissues of his rotator cuff back over to his greater tuberosity, but because of his long term smoking, and previous surgical procedure on this shoulder, he continued to do poorly.  This obviously did not heal completely into a normal function.  He has a lot of scar tissue in his shoulder at this time.
>
> On exam at this time he has about 120 degrees of passive forward flexion, but only about 85 degrees of active forward flexion.  Abduction is only about 30 to 40 degrees of abduction.  He has good strong strength in posterior elevation.  Examination of his shoulder showed some mild atrophy of his deltoid anteriorly.  His supraspinatus and infraspinatus are markedly atrophic.  This was present even on the initial examination back in 2005, and I think this was primarily part of the problem that he had a long standing tear of his rotator cuff prior to the initial evaluation that resulted in severe atrophy of both the supraspinatus and infraspinatus.  Jeff is continuing to smoke, and I do not think that a repeat reconstruction of his shoulder is indicated.  I would like for him to continue on his exercise

>program though trying to maintain as much motion as possible. Even without a functioning rotator cuff Jeff should be able to strengthen his deltoid around his shoulder and increase the motion and function.
>
>I think he will have a permanent restriction of no overhead work, lifting nothing greater than 20 to 25 pounds and certainly not on a repetitive basis.

[R. 177].

In this case, the ALJ did not properly apply the Eleventh Circuit pain standard. The medical records show the presence of conditions that could reasonably be expected to cause disabling pain. The plaintiff was diagnosed with failed rotator cuff repair accompanied by a great deal of scar tissue and markedly atrophic shoulder muscles. [R. 177]. He testified that on an average day, his pain level without medication is about an eight on a scale of one to ten. [R. 199]. He takes Darvocet and Lyrica for pain, and that reduces his pain to a four to six on a scale of one to ten. [R. 199-200]. However, the plaintiff testified that if he takes his Lyrica as prescribed, that medication gives him blurred vision and makes him "just stare out, zone into nothing." [R. 189].

In finding that the plaintiff "obtains good relief from his medication," [R. 20], the ALJ failed to properly consider the side effects of the plaintiff's pain medication. Moreover, the medical evidence shows a longitudinal history of complaints of pain and attempts at relief that support the plaintiff's pain testimony. See SSR 96-7P 1996 WL 374186 at *7 ("In general, a longitudinal medical record demonstrating an individual's attempts to seek medical treatment for pain or other symptoms and to follow that treatment once it is prescribed lends support to an individual's allegations of intense or

persistent pain or other symptoms for the purposes of judging the credibility of the individual's statements."). There is no indication that the plaintiff's treating physician did not believe he suffered from severe pain. To the contrary, he prescribed strong pain medication in an attempt to relieve the plaintiff's pain.

Although the plaintiff clearly meets the pain standard, the ALJ's reasons for refusing to credit the plaintiff's pain testimony ("limited compliance with treatment instructions such as continuing to smoke and giving limited cooperation in physical therapy"), [R. 20], are not supported by substantial evidence. In Seals v. Barnhart, 308 F.Supp.2d 1241 (N.D. Ala. 2004), this court discussed a plaintiff's alleged failure to follow prescribed treatment:

> The first step in a case involving an alleged failure to follow prescribed treatment is determining whether a prescribed course of treatment is actually involved. Sometime this will be readily apparent. Other cases will not be so clear. Guidance in smoking cases can be found in case[s] involving recommendations to lose weight. In McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988), the court explained: "A physician's recommendation to lose weight does not necessarily constitute a prescribed course of treatment . . . ." Every recommendation by a physician does not constitute a prescribed course of treatment.
>
> It is also important to note that the standard requires that the failure to follow treatment is without good reason. McCall at 1319 ("[The Commissioner] may deny SSI disability benefits only when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work.")
>
> Even if it is assumed in the present case that the plaintiff's doctors instructions to stop smoking constituted a prescribed course of treatment, the plaintiff's failure to stop smoking does not necessarily constitute a refusal to follow that prescribed treatment. A willful refusal to follow treatment may not be assumed from a mere failure to accomplish the

9

> recommended change.  In McCall, the court was considering an obese claimant whose doctors had recommended weight loss.  The court held that "a claimant's failure to accomplish the recommended change [does not] constitute a refusal to undertake such treatment." McCall at 1219.  The court further noted that the claimant's "obesity, of itself, does not justify the conclusion that she has refused treatment . . . ." These standards seem equally applicable to the present case. Mere failure to stop smoking, like a failure to lose weight, does not constitute a refusal to under take [sic] a prescribed course of treatment.

Seals at 1250.  The Seals opinion cited two Seventh Circuit cases and one Eleventh Circuit case that followed the Seventh Circuit.  There can be no question that Seals correctly states the law[1], especially since the Commissioner did not appeal (obviously, because there was no ground for appeal).

The record, in fact, shows the plaintiff did try to stop smoking.  The medical records contain numerous notations that he was trying to quit.  A November 2, 2005, letter from Dr. Fambrough to Mark Leberte, M.D., stated as follows:

> I am not sure if Jeff's shoulder can be fixed.  We plan on proceeding with arthroscopic decompression of his shoulder and evaluation of his rotator cuff and attempts at repair of his rotator cuff.  Jeff is going to do his best to stop smoking between now and surgery.

[R. 121].  In a December 13, 2005, follow-up letter from Dr. Fambrough to Dr. Leberte reporting on the surgery, Dr. Fambrough said, "He's trying to cut back in his smoking and I hope he is successful at it."  [R. 118].  In an April 26, 2006, treatment note following the plaintiff's repeat surgery to repair his rotator cuff, Dr. Fambrough noted, "Jeff is working

---

[1] A large number of ALJs routinely ignore the principles of Seals.  Does the Commissioner never hold continuing education seminars for ALJs?  The principles outlined by Seals are simple and easily understood, and should be followed in determining whether there is a failure to follow prescribed treatment.

10

hard on cutting back his smoking." [R. 138]. On May 2, 2006, Dr. Fambrough remarked, "He is continuing to smoke so it is going to be a difficult time for Jeff to heal this." [R. 137]. In a June 7, 2006, treatment note, Dr. Fambrough noted again, "Jeff is doing very poorly at this time. He is trying to quit smoking." [R. 135]. The above shows the record does not contain substantial evidence to support a finding that the plaintiff did not try to stop smoking in the present case.

Breaking an addiction is not a simple matter of rationally deciding to cease the addictive behavior, whether it be smoking, drinking or drug abuse. The world would obviously be a better place if that were so. In the case of nicotine addiction, a mere failure to successfully stop smoking will not support a finding of willful refusal to try. If the plaintiff was unable to stop smoking because he was addicted to nicotine, his noncompliance would not be unjustified. The burden is on the Commissioner to produce evidence of unjustified noncompliance. Dawkins v. Bowen, 848 F.2d 1211, 1214, n. 8 (11th Cir. 1988). In the present case, the ALJ made no finding that the plaintiff was actually able, mentally and physically, to stop smoking. Nor did the Commissioner cite to any evidence, other than the plaintiff's failure to stop smoking, to show that his noncompliance was unjustified.

The ALJ also failed to make another finding essential to a denial of benefits for failure to follow prescribed treatment. The ALJ must find that following the prescribed treatment would restore the claimant's ability to work:

> In order to deny benefits under § 404.1530, the ALJ must find that if the claimant followed the prescribed treatment, his ability to work would be restored, and this finding must be supported by substantial evidence.

Patterson v. Bowen, 799 F.2d 1455, 1460 (11th Cir. 1986). If the ALJ fails to make this finding, or if his finding is not supported by substantial evidence, a claimant may not be denied benefits for failing to follow the prescribed treatment. In the present case, the ALJ did not make a finding that if the plaintiff stopped smoking, he would be able to work. He merely concluded that because of the plaintiff's continuing to smoke, "the objective evidence does not confirm either the severity of the claimant's alleged symptoms arising from the diagnosed conditions, or that those conditions could reasonably be expected to give rise to the symptoms alleged by the claimant." [R. 20]. Dr. Fambrough's statement in his November 2, 2006, letter was, "Jeff is continuing to smoke, and I do not think that a repeat reconstruction of his shoulder is indicated." [R. 177]. The inference from this that the ALJ appears to make is that a repeat reconstruction would be indicated if the plaintiff quit smoking. However, this is not explicitly stated by Dr. Fambrough, and the ALJ could have inferred just as easily that a repeat reconstruction is not indicated because of the abundant scar tissue and severe atrophy of the shoulder muscles. In fact, the doctor's notes show that he <u>never</u> thought the plaintiff's shoulder could be successfully reconstructed. In any event, there is not substantial evidence to support a finding that the plaintiff would improve to the point of allowing work.

Therefore, when the proper legal standards concerning refusal to follow prescribed treatment are applied to the present case, it is clear that substantial evidence would

not support a denial of benefits on that ground. The ALJ did not make the requisite finding that the plaintiff would be able to return to work and such a finding would not be supported by substantial evidence. The ALJ did not properly consider the large amount of evidence showing the plaintiff did try to stop smoking.

The ALJ's finding that the plaintiff does not meet the second prong of the Eleventh Circuit's pain standard is not supported by substantial evidence. Therefore, the plaintiff's pain testimony must be accepted as true. The vocational expert (VE) testified that pain at the level testified to by the plaintiff and the concurrent side effects of his pain medication "would eliminate all job opportunities." [R. 204]. The ALJ failed to consider how the plaintiff's pain and medication side effects would affect the plaintiff's ability to maintain adequate work attendance.

## CONCLUSION

Therefore, the Commissioner failed to carry his burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act. An appropriate order remanding the action with instructions that the plaintiff be awarded the benefits claimed will be entered contemporaneously herewith.

DONE and ORDERED 2 July 2008.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.